
FILED
IN CLERK'S OFFICE
U S DISTRICT COURT E.D.N.Y.
★ OCT 11 2013 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
DEOCHAN SINGH,

                Plaintiff,

- against -

BAY CRANE SERVICES, INC.,

                Defendant.
----------------------------------------------------------- x

**MEMORANDUM OF DECISION**

11 CV 720 (RJD) (RER)

DEARIE, District Judge.

Pursuant to 42 U.S.C. § 1981 and the New York City and State Human Rights Laws, plaintiff Deochan Singh, a Guyanese man of Indian descent, brings claims of unlawful discrimination against defendant Bay Crane Services, Inc. ("Bay Crane"). Singh alleges that Bay Crane refused to hire him as a construction crane operator on account of his race and national origin. Bay Crane moves for summary judgment, arguing that Singh has failed to establish a prima facie case of discrimination. Bay Crane also proffers a non-discriminatory reason for its decision not to hire Singh. Singh counters by pointing to evidence in the record that suggests that Bay Crane's justification is false, as well as additional circumstantial evidence permitting the inference that Bay Crane refused to hire him on account of his race or national origin. Accordingly, Bay Crane's motion must be denied.

The facts, viewed in the light most favorable to Singh, are as follows. The New York City Transit Authority periodically enters into a contract with an outside vendor for the leasing and operation of construction cranes (the "Transit Authority contract"). For approximately thirteen years, Singh worked as a crane operator on the Transit Authority contract. He first worked on the contract from 1997 to 2000, when it was serviced by Railroad Maintenance

Corporation in partnership with Bay Crane. Bay Crane's role at that time was "strictly fiscal" and the crane operators were not on its payroll. (Bernardo Dep. 11-12). In 2000, Southern Service Group ("Southern Service") won the bid for the Transit Authority contract, replacing Railroad Maintenance Corporation and Bay Crane. Upon winning the contract, Southern Service hired every crane operator that had previously worked on the contract, including Singh.

Singh then worked for Southern Service from 2000 to 2010, when Bay Crane won the Transit Authority contract, this time without a partner. Bay Crane hired many of Southern Service's employees and crane operators, but did not hire Singh. Singh claims that Bay Crane refused to hire him because of his race or national origin. He explains that Bay Crane hired six other crane operators who had previously been employed by Southern Service on the Transit Authority contract, all but one of whom were white. Singh also stresses that forty-three out of the forty-nine other crane operators hired by Bay Crane to work on the Transit Authority contract were white. (Bernardo Dep. 27-57).[1]

Bay Crane counters by explaining that it did not actually hire every crane operator previously employed by Southern Service. Rather, according to Joseph Bernardo, Bay Crane's principal owner and hiring manager, Bay Crane hired all six of the Southern Service crane operators who were principally assigned to a specific location (the "yard operators"), while not hiring the operators who worked in different locations from day-to-day (the "field operators").[2] (Bernardo Decl. ¶¶ 7-12). Bernardo stated that he decided not to hire Southern Service's field

---

[1] The parties have been unable to determine the racial identities of the remaining six operators Bay Crane hired to work on the Transit Authority contract.

[2] Bay Crane uses the term "as needed" to describe these operators. Singh objects to that term, claiming that it obscures the nature of their assignment. Accordingly, the Court adopts the term "field operators."

2

operators because Bay Crane already had a pool of field operators with whom it had worked for years. In contrast, Bernardo hired the six Southern Service yard workers to ensure continuity, because the yard workers were already familiar with operations on their respective sites. Bernardo further explained that he did not undertake any individualized assessments of the crane operators: the six yard workers were in, and the field workers, including Singh, were out. Accordingly, says Bay Crane, Singh cannot make out a prima facie case of discrimination because he was treated like everyone else. Moreover, Bay Crane argues that, even if Singh could make out a prima facie case, he has not rebutted Bay Crane's non-discriminatory hiring distinction between the field operators and the yard operators.

Singh has identified two problems with Bay Crane's explanation. First, Singh presents evidence that Bay Crane hired at least one field operator after all: Michael Caridi. (Singh R. 56.1 Statement ¶ 33).[3] Second, Singh presents evidence that the other field operator Bay Crane claims not to have hired, William Bell, was no longer working for Southern Service when Bay Crane won back the Transit Authority contract, having retired almost a year before. (O'Neill Decl. Ex. C). Therefore, according to Singh, Bay Crane in fact hired every available Southern Service crane operator but him, including at least one other field operator. Hence Singh argues that he has made out a prima facie case, and that Bay Crane's asserted non-discriminatory distinction between field operators and yard operators is contrived.

Singh's evidence is sufficient to raise a genuine dispute of material fact. He directs the Court to records suggesting that Bell was no longer working on the Transit Contract as of August

---

[3] Singh also contends that Bay Crane hired another field operator, Thomas Bencivenga. However, Singh's citation to Bernardo's deposition does not support his contention that Bencivenga was a field operator at the time Bay Crane began servicing the Transit Authority contract. (Bernardo Dep. 15-16). Rather, Bencivenga appears to have been a manager, and not in the pool of available yard or field crane operators.

3

2009, as well as payroll records and testimony indicating that Caridi was a field operator for Southern Service and yet was hired by Bay Crane after it resumed service under the Transit Contract. (Singh R. 56.1 Statement ¶¶ 32-33).[4] Bay Crane has attacked the accuracy of this evidence, relying principally on declarations from Bell and Caridi. The Court cannot reject Singh's position outright on the basis of these declarations. The status of Bell and Caridi both before and after Bay Crane won the Transit Authority contract remains in dispute, which puts Bay Crane's non-discriminatory rationale in dispute. That dispute must be resolved in favor of Singh for the purposes of this motion.

Viewing the facts in that indulgent matter, the Court concludes that summary judgment is inappropriate. Singh has stated a prima facie case under the McDonnell Douglas burden shifting framework. The Second Circuit has repeatedly explained that, at the summary judgment stage, a plaintiff's initial burden under McDonnell Douglas is de minimis, requiring no evidence of invidious discrimination whatsoever:

> [A] plaintiff can avoid dismissal by presenting the "minimal" prima facie case defined by the Supreme Court in McDonnell Douglas. This requires no evidence of discrimination. It is satisfied by a showing of membership in a protected class, qualification for the position, an adverse employment action, and preference for a person not of the protected class. By making out this "minimal" prima facie case, even without evidence of discrimination, the plaintiff creates a presumption that

---

[4] Bay Crane, evidently blindsided by what Singh refers to as the "Bell Retirement Documents," (O'Neill Decl. Ex. B), objects to their use on this motion on the grounds that they are not authenticated. Bay Crane is within its rights to do so: although it is a "rather technical" objection, Rule 56(e) requires the non-moving party to produce admissible evidence. See Tradax Energy, Inc. v. Cedar Petrochems., Inc., 317 F. Supp. 2d 373, 379 (S.D.N.Y. 2009). While the Bell Retirement Documents certainly appear to be admissible business records, they are not self-authenticating, and the declaration of Singh's attorney does not provide the Court with all the information necessary to establish their admissibility under Federal Rule of Evidence 803. However, the Court does not construe Bay Crane's objection to extend to any other documents, which include the complete Southern Service payroll records for 2010. (O'Neill Decl. Ex. C). Bell is absent from those records, and that is enough to raise the inference in Singh's favor.

4

the employer unlawfully discriminated, and thus places the burden of production
on the employer to proffer a nondiscriminatory reason for its action.

Joseph v. Leavitt, 465 F.3d 87, 90 (2d Cir. 2006) (quoting James v. New York Racing Ass'n, 233 F.3d 149, 153-54 (2d Cir. 2000)). Singh has satisfied this minimal standard. There is no real dispute that he is a member of a protected class and that he is qualified for the position. Nor do the parties dispute that Bay Crane's refusal to hire Singh along with the rest of the crane operators was an adverse employment action. Cf. Cunningham v. New York State Dept. of Labor, 326 F. App'x 617, 619 (2d Cir. 2009) ("adverse employment actions typically involve 'discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand'" (quoting Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999))). Moreover, by demonstrating an evidentiary basis for finding that he was the only crane operator not hired, Singh has in turn established the minimal basis required to support the finding that Bay Crane preferred persons outside his protected class.[5]

Singh also argues that, by impugning Bay Crane's professed non-discriminatory rationale, he has defeated Bay Crane's motion – though he appropriately concedes that a plaintiff is not always entitled to summary judgment when it casts doubt on an employer's non-discriminatory rationale. See generally William v. Mount Sinai Med. Ctr., 859 F. Supp. 2d 625, 635 (S.D.N.Y. 2012) (collecting cases). As the Second Circuit explained in James, 233 F.3d at 154:

---

[5] Bay Crane asserts that Bernardo never met or spoke with Singh and thus did not know his racial identity or national origin. Singh concedes that he never personally met with Bernardo, (Singh Dep. 68-71), but points out that Bernardo may have learned that information through a co-worker, also named Bernardo, or through Thomas Bencivenga. (Singh R. 56.1 Statement ¶ 36). That assertion is too speculative on its own to create a genuine dispute of fact. However, Singh also points out that his name is easily recognizable as an Indian surname. His name does stand out from those of the yard operators: Bencivenga, Capparelli, Grasso, Hall and Victor. (Bay Crane R. 56.1 Statement ¶ 8). Accordingly, the question of whether Bay Crane's hiring manager knew Singh's national origin remains a question for the jury.

5

> The requirements of the McDonnell Douglas prima facie case are so minimal that they do not necessarily support any inference of discrimination; and there are so many reasons why employers give false reasons for an adverse employment action that evidence contradicting the employer's given reason-without more-does not necessarily give logical support to an inference of discrimination.

On the other hand, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of intentional discrimination, and it may be quite persuasive." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).

Here, Bay Crane's asserted distinction between yard operators and field operators is inconsistent with the facts (assumed true solely for purposes of this motion) that Bell was not actually available to be hired, and that Caridi was hired. Moreover, Singh has pointed to additional circumstantial evidence in the record that would permit a fact-finder to infer that Bay Crane discriminated him on the basis of race or national origin. Specifically, if a fact-finder agreed that Singh was the only available crane operator (field or yard) not hired by Bay Crane, that fact, coupled with the evidence that forty-three out of the forty-nine other Bay Crane operators on the Transit Authority contract were white, would permit an inference of discrimination. In these circumstances, we cannot say that Bay Crane has rebutted Singh's prima facie case so thoroughly that the Court may grant summary judgment to Bay Crane on Singh's federal claim.

Finally, we conclude that, even if Singh were not entitled to proceed on his federal claim, he would still be entitled to proceed on his New York City Human Rights Law claim. The City Human Rights Law is to be construed more broadly than federal anti-discrimination laws. See, e.g., Fincher v. Depository Trust and Clearing Corp., 604 F.3d 712, 723 (2d Cir. 2010).

Although it is not necessarily clear what this broad construction may mean in any given case, Singh has directed the Court to the Appellate Division's recent decision in McRedmond v. Sutton Place Rest. & Bar, Inc., 95 A.D.2d 671, 674 (App. Div. 2012), which explained that "the City HRL . . . requires only that a plaintiff show that 'at least one of the reasons proffered by [the] defendant is false, misleading, or incomplete.'" That lenient formulation permits Singh to proceed to trial so long as he can demonstrate any basis for finding that Bay Crane's professed non-discriminatory rationale is false, which he has done.

Therefore, Bay Crane's motion for summary judgment is denied.

SO ORDERED.

Dated: Brooklyn, New York
      October 9, 2013

s/Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge