UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- x
DEOCHAN SINGH,

                              Plaintiff,

- against -

BAY CRANE SERVICES, INC.,

                              Defendant.
------------------------------------------------------- x

**MEMORANDUM AND ORDER**

11 CV 720 (RJD) (RER)

DEARIE, District Judge.

By letter application dated October 15, 2013 (ECF No. 40), defendant Bay Crane Services, Inc. ("Bay Crane") moves the Court to reconsider its earlier denial of summary judgment. (Order, ECF No. 38); (Mem. of Decision, ECF No. 39). Plaintiff opposes the motion by letter dated October 22, 2013. (ECF No. 41). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transportation, Inc., 70 F.3d 255, 257 (2d Cir. 1995).

Bay Crane's motion must be denied because the Court previously considered and has now re-examined the matters raised in its letter, including the absence of Thomas Bencivenga from the Southern Service Group ("Southern Service") payroll records and the existence of Transit Authority operator work ticket records listing William Bell, both of which Bay Crane alluded to in its reply papers. (Bay Crane Reply Mem. 5-6, ECF No. 31-2). The Court has no quarrel with Bay Crane's reliance on these portions of the record in support of its position, particularly when coupled with Bell's declaration. Bay Crane, pushed hard by Singh,

undoubtedly pushed right back, launching an "attack" on the accuracy of Singh's evidence, as the Court earlier put it. (Mem. of Decision 4). However, we cannot agree that Bay Crane's attack carries the day when viewed in the full context of the record, not on a motion for summary judgment – hence the Court's deliberately measured conclusion that Bell's status "remains in dispute." (Id.)

The full context reveals problems of proof that Bay Crane cannot overcome via motion. We begin by reiterating Singh's claim: when Bay Crane won the Transit Authority contract and took over from Southern Service in or about September 2010, it hired every single crane operator then employed by Southern Service, except for Singh. Bay Crane defends against that claim by asserting that it deliberately distinguished between two categories of crane operators, the yard operators and the field operators, and that it hired only the yard operators. In support Bay Crane points to Bell, whom Bay Crane claims was in the same position at Singh – that is, a field operator employed by Southern Service at the time Bay Crane won the contract, ready and willing to work for Bay Crane, but whom Bay Crane did not hire because he was not a yard operator. Singh counters that Bay Crane's non-hiring of Bell proves nothing, because Bell was no longer employed by Southern Service at that time and in fact had retired. Accordingly, Bell's employment status with Southern Service is a material fact: if Bay Crane indeed rejected Bell, despite his continued availability, because he was a field operator, that fact would lend powerful support to Bay Crane's defense. But if Bell had retired or was planning to retire as of September 2010 then he simply was not in the same position as Singh, and Bay Crane's defense – we treated like cases alike – loses much of its force, particularly when coupled with evidence that it hired one of the other field operators, Michael Caridi.

2

So what was Bell's employment status and availability? In the Court's view, the record does not supply a clear answer, but a rational fact-finder could conclude (even without the Bell retirement documents) that Bell had transitioned to a semi-retired status before September 2010 and reject his contrary claim to have been working full-time throughout 2010 while intending to continue doing so.

Bell testified that he permanently retired in September 2010, but only after he learned that Bay Crane would not be hiring him:

> Q: Now, what does it mean to retire when you're an operating engineer?
>
> A: Stop work, that's it. Put in your papers and that's it. You collect your Social Security, your pension and the annuity and that's it.
>
> ***
>
> Q: You said you retired in September?
>
> A: September of?
>
> Q: 2010?
>
> A: Yeah, 2010.
>
> ***
>
> Q: Now, I think you said you retired in September 2010?
>
> A: Yes. When I wasn't asked to work for them I wasn't going to bounce out of union hall. I said, "Put my papers in." That was it.
>
> (Bell Dep. 6-7, 11, ECF No. 30-8).

Thus Bell denied that he fully retired before September 2010. However, he further explained that crane operators have the option of taking partial retirement with sharply limited hours. Although Bell was not directly asked whether he availed himself of that option, he implicitly denied it when asked how many hours he worked in 2010:

3

Q: Under the pension plan or the annuity plan, are you able to do some work and still collect a pension?

A: Yes.

Q: Is it measured by hours or something else?

A: It's 40 hours a month, I believe it is.

Q: How many hours did you work on the transit contract in 2010 before it was taken over by Bay Crane?

A: Until September. I don't know, I was working like 60 hours a week maybe.

\*\*\*

Q: How many days a week did you work on the transit contract?

A: Friday, Saturday, Sunday.

(Bell Dep. 12-13).

That statement implies that Bell did not avail himself of partial retirement, a representation that conflicts with both Singh's testimony and the testimony of Mario Grasso, a manager at Southern Service. Singh testified that Bell had already partially retired, and that Bell told him so directly:

Q: Who is William Bell?

A: A crane operator.

Q: And did he work as a crane operator during the life of the transit contract while you were employed at Southern Service?

A: Yes, but before I leave here, I was told he retired.

Q: Who told you that?

A: William Bell himself.

\*\*\*

4

Q: If I showed you a document that indicated he was working shifts as late as August 2010, would that surprise you based on the information that you had?

A: It wouldn't surprise me. I was told he retired by him and he's to work only a few hours per week.

(Singh Dep. 30-32, ECF No. 30-5).

Grasso indirectly corroborated Singh's account. Though he could not precisely recall the details, he initially stated that Bell retired or "semi" retired relatively recently, possibly at age 62 (i.e. August 2009). He also confirmed that retirees can still work, but only for limited hours:

Q: Do you know someone named William Bell?

A: That's Billy Bell. He's retired now.

Q: He is retired?

A: (Witness nods head.)

Q: Do you know when Billy Bell retired?

A: '62. I can't recall. A couple of years back he started to retire, semi retire.

\*\*\*

They're still allowed to work so many hours per month, so.

Q: They are retired, but they are still able to work?

A: If they want to.

MR. KAISER: Do they work less hours?

THE WITNESS: Yes.

MR. KAISER: Are they available to work sometimes?

THE WITNESS: Yes.

Q: Do you know whether or not there is a cap in the amount of hours that they can work being retired?

5

A: I believe there is. I don't know what it is.

(Grasso Dep. 28-30, ECF No. 30-6).

Accordingly, Bell's claim to have neither partially nor permanently retired before September 2010, as well as his claim to have been working for Southern Service full-time (i.e. sixty hours per week) throughout 2010, conflicts with the testimony of both Singh and Grasso. The point is not merely academic, because if Bell could in fact only work a maximum of forty hours per month, he simply was not in the same position as Singh or the other crane operators seeking full-time employment. Furthermore, an uncharitable finder-of-fact could conclude that Bell misrepresented his retirement status in his deposition, a conclusion that would in turn call the entirety of his testimony into doubt. That is not the Court's conclusion – union pension rules are often complicated, and confusion among the three witnesses is a likely explanation. But the contradiction is unavoidable.

When we turn to the documentary evidence for further illumination, we see similar problems. The payroll records, as the Court previously noted (Mem. of Decision 3-4), suggest that Bell was not working on the Transit Contract at all in 2010. On the other hand, as Bay Crane asserted in its original briefing and has reiterated in its letter application for reconsideration, Thomas Bencivenga was working for Southern Service throughout 2010, and yet he is absent from the payroll records as well. Perhaps, then, the finder-of-fact should merely infer that Southern Service's recordkeeping was shoddy, and disregard the payroll records as

inaccurate; "incomplete," as Bay Crane says.[1] (Bay Crane Letter Appl. 1). The Court considered this possibility, taking care to note only that the payroll records "raise[d] the inference" in Singh's favor – more precisely, that Singh's assertion that Bell had retired prior to September 2010 is correct. Does Bencivenga's absence from the records dispel that inference? Possibly, but we certainly cannot make that finding in the context of Bay Crane's motion for summary judgment.

The work ticket records from the Transit Authority (Kaiser Decl. Ex. A, ECF No. 30-1) cannot dispose of the matter either. The records are not self-explanatory, but the Court took them to indicate that a listed operator performed work on the Transit Authority contract on the date listed. (Grasso Dep. 18-19). So interpreted, the documents contradict the payroll records, and thus support Bay Crane, because they show Bell working on weekends. And yet, so interpreted, the documents simultaneously reinforce Singh's contention that Bay Crane hired Caridi, another field operator, whose name appears repeatedly and often in the work ticket records after September 2010.

The August 2010 entries for Bell are also puzzling. Bell testified that he accrued sixty hours per week while working solely on weekends, and although that pace appears implausible at first blush, it is ultimately consistent with lengthy shifts counted as double-time. (See Grasso Dep. 20). However, it seems not merely implausible, but flatly impossible for Bell to have maintained that pace in August 2010, during which these records show Bell submitting a work

---

[1] The Court did not mean to foreclose this avenue of argument by describing the payroll records as complete. We use the term in the same sense as Singh, that is, a "complete copy of the payroll documents provided by Southern Service . . . ." (O'Neill Dec. ¶ 8). In other words, the Court accepts Singh's representation that he provided a full set of the records for the crane operators, and that there are no records listing Bell. Whether the records are "complete" in the sense that Southern Service prepared a record for all of the operators in its employ for that time period is an open question.

ticket on four days in total, and only one full weekend. Why then would he claim to have been working sixty hours per week until September? On that point, the work ticket records confuse as much as they clarify.

We are also struck by Grasso's reaction to the work ticket records. When presented with both the payroll records and the work ticket records, and asked to clarify Bell's retirement status, Grasso could not do so. The documents thoroughly confused him:

> A: [Bell] did retire. Probably – you know, it's possible – I'm thinking, it's possible he retired, maybe, it was 2010.
>
> I really don't recall.
>
> I'm thinking about it. That's why he wasn't on there.
>
> Q: Those payroll records were from 2010?
>
> A: It's possible that he retired before that.
>
> Q: You don't know?
>
> A: I really don't know.
>
> \*\*\*
>
> Q: Does [the work ticket record] seem to show hours through the Summer of 2010, August?
>
> A: (No response.)
>
> Q: Does it refresh your recollection?
>
> A: He might have been. He might have been part-time.
>
> \*\*\*
>
> Q: He may have continued to work as the crane operator through the end of the contract?
>
> A: Sure.
>
> (Grasso Dep. 42-43).

8

Given that Southern Service' designated Rule 30(b)(6) witness and former manager (Grasso Dep. 7-8) could not reconcile his recollection of Bell's status with Bell's apparent submission of work tickets to the Transit Authority, the Court remains hesitant to rely on the work ticket records when asked to dismiss the case. This is not the sort of evidentiary milieu from which summary judgment comfortably arises.

Though we think it should have been apparent from the tenor of our earlier memorandum, we nevertheless emphasize that, in ruling for Singh, the Court did not endorse Singh's factual contentions. We make no "finding" (Bay Crane Letter Appl. 1) and express no opinion on who ultimately has the better of this or any other evidentiary dispute. There are problems of proof here that cannot be resolved without weighing the evidence and making credibility determinations, and those must be reserved for a trial on the merits.

In conclusion, the Court considered the matters Bay Crane raises in its motion for reconsideration (matters it raised in its original papers), has reviewed the record again, and adheres to the view that the evidence does not support summary judgment. The Court is not unsympathetic to Bay Crane, which has advanced a seemingly sensible explanation for its hiring practices, only to be frustrated about by an opaque and contradictory record. But we cannot paper over the cracks in favor of the moving party. The motion for reconsideration is therefore denied.

SO ORDERED.

Dated: Brooklyn, New York
      December 11, 2013

/s/ Judge Raymond J. Dearie

_____
RAYMOND J. DEARIE
United States District Judge