UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------- x
DEOCHAN SINGH,

               Plaintiff,

- against -

BAY CRANE SERVICE INC.,

               Defendant.
-------------------------------------------------------- x

**MEMORANDUM AND ORDER**

11 CV 720 (RJD) (RER)

DEARIE, District Judge.

Before the Court is a motion *in limine* by defendant Bay Crane Service Inc. ("Bay Crane"). The defendant Bay Crane contends that the plaintiff, Deochan Singh, should be precluded from admitting into evidence the racial composition of Bay Crane's crane operators, as (1) the evidence is statistical evidence requiring expert analysis to be properly admitted, and (2) the evidence is not relevant, because the racial composition of the hiring pool for the crane operators is determined by a union and "other realities of the industry." For the reasons set forth below, the motion is denied.

## BACKGROUND

Plaintiff Singh, a Guyanese man of Indian descent, commenced this action on February 14, 2011, bringing claims of unlawful discrimination against defendant Bay Crane, pursuant to 42 U.S.C. § 1981 and New York law. Complaint, ECF Docket # 1. Plaintiff Singh alleges that he was employed by Bay Crane as a crane operator from 1997 until about 2000, during which time he worked on Bay Crane's project for the New York City Transit Authority for the maintenance and operation of the New York City subway system (the "Transit Project"). Id. at ¶¶ 8, 10, 13. In 2000, Bay Crane lost the Transit Project contract to Southern Service Group ("Southern

Service"), but Southern Service hired all of the employees from Bay Crane who had worked on the Transit Project, including Singh. Id. at ¶¶ 14, 16-17. On September 1, 2010, Bay Crane won the Transit Project contract back from Southern Service and, according to Plaintiff Singh, hired back all of its crane operators from Southern Service, *except* for Singh. Id. at ¶¶ 19, 21. Singh was the only crane operator of Indian descent and one of only two non-White minority crane operators working on the Transit Project at Southern Service. Id. at ¶ 20. Accordingly, plaintiff Singh alleges that Bay Crane refused to hire him as a construction crane operator on account of his race and national origin. Id. at ¶¶ 22-23, 25, 27.

Defendant Bay Crane moved for summary judgment on September 7, 2012, arguing that Singh had failed to establish a prima facie case of discrimination and proffering a non-discriminatory reason for its decision not to hire him (that it only hired the crane operators who had been working at a certain location of the Transit Project). Motion for Summary Judgment by Bay Crane Service Inc., ECF # 30. Singh countered by pointing to evidence in the record suggesting that Bay Crane's justification was false, as well as additional circumstantial evidence permitting the inference that Bay Crane refused to hire him on account of his race or national origin. Memorandum in Opposition to Motion for Summary Judgment by Bay Crane Service Inc., ECF # 32. On October 9, 2013, this Court denied Bay Crane's motion for summary judgment, finding that, "if a fact-finder agreed that Singh was the only available crane operator . . . not hired by Bay Crane, that fact, coupled with the evidence that forty-three of the forty-nine other Bay Crane operators on the Transit Authority contract were white, would permit an inference of discrimination." Singh v. Bay Crane Services, Inc., 11 CV 720(RJD)(RER), 2013 WL 5655931, at *3 (E.D.N.Y. October 11, 2013). The Court similarly denied Bay Crane's

motion to reconsider two months later. Singh v. Bay Crane Services, Inc., 11 CV 720(RJD)(RER), 2013 WL 6628961 (E.D.N.Y. December 16, 2013).

Facing trial—currently scheduled for May 4, 2015—defendant Bay Crane moves *in limine* for the Court to preclude plaintiff Singh from admitting into evidence the racial composition of Bay Crane's crane operators, as (1) the evidence is statistical evidence requiring expert analysis to be properly admitted, and (2) the evidence is not relevant, because the racial composition of the hiring pool for the crane operators is determined by a union[1] and "other realities of the industry." Defendant's Motion In Limine, ECF Docket # 52.[2]

## STANDARD OF REVIEW

"Although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials." Luce v. United States, 469 U.S. 38, 41 n. 4 (1984). "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir.1996) (quotations omitted).

---

[1] International Union of Operating Engineers Local 14-14B, AFL-CIO ("Local 14"), the relevant union, is the collective bargaining representative of individuals who operate various types of heavy equipment in the construction industry within New York City.

[2] Notably, defendant Bay Crane was named in a separate suit, brought by plaintiff Singh's attorneys, against Local 14 and several crane operating companies, alleging discrimination on the basis of race concerning who became eligible to work in the crane operator industry. Morrison v. Int'l Union of Operating Eng'rs Local 14-14B, AFL-CIO, et al., 12 CV 301(FB)(RER) (E.D.N.Y.). All of the crane operating companies were dismissed from the action by stipulation on July 30, 2014, Morrison, 12 CV 301, ECF Docket # 136, which defendant Bay Crane states was because "[t]here was no evidence that the contractors had any control over the composition of the applicant pool," which was "largely controlled" by Local 14, Defendant's Reply Memorandum of Law in Further Support of its Motion In Limine ("Def's Reply Memo"), ECF Docket # 59, p. 4. The case against Local 14 is still pending before Judge Block.

"Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds. Wechsler v. Hunt Health Sys., Ltd., 381 F.Supp.2d 135, 140 (S.D.N.Y. 2003). The Federal Rules of Evidence provide that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court." Fed.R.Evid. 402. However, even relevant evidence should be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Id. at 403.

## ANALYSIS

1. The Admissibility of Statistical Evidence in Disparate Treatment Claims

Statistical evidence alone may not form the basis of a disparate treatment action; however, statistical evidence may be used as circumstantial evidence to bolster such a claim. See, e.g., Hudson v. Int'l Bus. Machs. Corp., 620 F.2d 351, 355 (2d Cir. 1980) ("[Plaintiff] has failed to establish his case and the statistics standing alone do not create it."); Drake v. Delta Air Lines, Inc., 94 CV 5944(FB)(RML), 2005 WL 1743816, at *6 (E.D.N.Y. July 21, 2005) ("Statistics alone are insufficient in a disparate-treatment claim because an individual plaintiff must prove that he or she *in particular* has been discriminated against.") (citing Hudson, 620 F.2d at 355) (emphasis in original); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 805 (1973) (finding in a race discrimination disparate treatment action that "statistics as to [the employer]'s employment policy and practice may be helpful to a determination of whether [the employer]'s refusal to rehire [the employee] . . . conformed to a general pattern of discrimination against blacks.")

4

In Luciano v. Olsten Corp., the Second Circuit determined that a district court had not erred in admitting into evidence certain simple statistical evidence[3] in a gender discrimination disparate treatment case without an expert. 110 F.3d 210, 217-218 (2d Cir. 1997). The district court's stated reasons in Luciano were as follows: "(1) the statistics were relevant for the limited purpose offered by [the plaintiff], as one piece of circumstantial evidence supporting her claim of pretext . . . ; (2) the raw data was credible and reliable because it came from [the defendant company]'s records and admissions . . . ; (3) the data was probative of discriminatory intent because a sufficiently relevant labor pool was identified . . . ; (4) an expert was not necessary because the data offered was not of a scientific nature but merely reflected existing conditions at the [c]ompany at the time of [the plaintiff]'s termination; and (5) the evidence did not unduly prejudice the defendants," largely because of a "cautionary instruction" to the jury regarding the usefulness of statistics[4]. Id.

Later that same year, the Second Circuit again found that "[i]n view of the simple nature of the statistical analysis, the district court's cautioning instruction, and the overall evidence in

---

[3] The statistical evidence consisted of (a) a bar graph showing the percentage of women at the defendant company at different levels of responsibility on the date the female plaintiff was terminated and (b) a chart showing the number of women and men, together with their percentage of the workforce, in certain executive positions and the average salaries for each of those positions on the date the plaintiff was terminated. Luciano, 110 F.3d at 217.

[4] That jury instruction, most of which this Court finds to be highly appropriate for this case, read as follows:
> I caution you that the usefulness of statistics and numbers depends on all the surrounding facts and circumstances. In other words, the statistics and numbers offered must be compared with a number of factors, including, among other factors, the relevant labor market, including the qualified applicant pool, the relative numbers of men and women who were both qualified for and interested in management jobs with the [defendant] company.
>
> It is for you, the jury, to weigh all the statistical, numerical and graph evidence presented by the parties and decide what weight and significance, if any, you want to give to it.

Luciano, 110 F.3d at 218.

5

the case, the district court did not abuse its discretion by receiving . . . into evidence" simple statistical evidence[5] in an age discrimination disparate treatment case without an expert. Stratton v. Dep't. for the Aging for the City of New York, 132 F.3d 869, 877 (2d Cir. 1997). The Stratton court's stated reasons were as follows: (1) the "charts were reliable," because "[t]hey were [the] defendants' own documents," and plaintiff had only added the ages, which were basic, undisputed information taken from the defendants' own records; (2) no expert was required for statistical evidence in disparate treatment cases where only "simple arithmetic was used" and "[t]here were no sophisticated statistical theories that needed explanation"; (3) the defendants "could have offered their own charts or statistics or called their own expert witness," to counter plaintiff's interpretation of the information; (4) the drop in average age was relevant and admissible "to support a claim of discrimination even in a disparate treatment case involving a single plaintiff,"; (5) the plaintiff was not relying solely on the statistical evidence but merely using it as circumstantial support; and (6) "the district court cautioned the jury" appropriately "not to place undue reliance on the charts by giving [a jury] instruction." Id.

Following Luciano and Stratton, district courts in the Second Circuit have commonly rejected statistical evidence in disparate treatment cases where that evidence required far more complicated analysis, or was based on a much less credible foundation. See, e.g., Walker v. City of New York, 11 CV 2941(KPF), 2014 WL 1244778, at *8 n. 8 (S.D.N.Y. March 26, 2014) ("Plaintiff alleges that 'of the 136 applicants for reinstatement to the NYPD,' 81% of white males (49 out of 59) were reinstated, while only 50% of black females (3 out of 6) were reinstated," but "[p]laintiff has done nothing to separate these statistics by year, length of

---

[5] The statistical evidence consisted of the defendant company's organizational charts, marked to show each employee's age, representing that the average age had dropped from 50.3 to 45.9. Stratton, 132 F.3d at 877.

6

application, time away from the NYPD, [etc.]," and "[p]laintiff has not introduced these statistics through an expert witness . . . or applied any sort of rigorous analysis to increase the reliability of these numbers."); LaMarch v. Tishman Speyer Properties, L.P., No. 03 CV 5246(CBA), Report and Recommendation, ECF Docket # 58, at 29 (E.D.N.Y. July 12, 2006) ("[Plaintiff] names 20 individuals over the age of 40 who were terminated from 1996 through 2003, 14 of those in 2000 through 2002," but "[a]s plaintiff proffers no information as to the number of individuals over the age of 40 who were employed . . . during these time periods, it is impossible to determine whether [these terminations] represent significant numbers.") (adopted by LaMarch v. Tishman Speyer Properties, L.P., [hereinafter "LaMarch Opinion"] No. 03 CV 5246(CBA), 2006 WL 2265086, at *6 (E.D.N.Y. August 8, 2006)). However, Luciano and Stratton remain good law. See, e.g., Albert v. New York City Sch. Constr. Auth., 99 Fed. Appx. 306, 311 (2d Cir. 2004) (finding that a district court's instruction about the probative value of comparative salary charts in a race discrimination disparate treatment case was proper because it "[wa]s not materially different from a similar charge affirmed by" the Second Circuit in Luciano).

2. Application

Defendant Bay Crane cites a litany of cases to support its position that plaintiff Singh may not admit into evidence the racial composition of Bay Crane's crane operators without the assistance of expert testimony. Defendant's Motion In Limine at 2; see, e.g., LaMarch Opinion, 2006 WL 2265086, at *6 (finding inadmissible statistical evidence about termination of employees older than 40 because it was not supported by any expert analysis and would be anecdotal "speculation and hearsay"); Saenger v. Montefiore Medical Center, 706 F.Supp.2d 494, 515-516 (S.D.N.Y. 2010) (noting that "statistical evidence, such as it is in this [age discrimination] case, must be supported by expert analysis," but citing, for this position,

7

LaMarch Opinion and a Seventh Circuit case, both of which required expert analysis for complex statistical evidence offered to show age discrimination). Additionally, defendant Bay Crane places the blame for the whitewashed racial composition of its crane operators on Local 14 and "other realities of the industry," noting that while "[i]t may well be that the [c]rane [o]perator business is very white[,] . . . that is an industry wide fact having nothing to do specifically with Bay Crane's hiring practices," Defendant's Motion In Limine at 3, and, at any rate, the racial composition of the applicant pool was "largely controlled," by the union, Def's Reply Memo at 4. This Court rejects both arguments.

First, the defendant Bay Crane's selective citations on expert analysis are a red herring, which overstate the requirement for expert testimony in situations such as this. Defendant Bay Crane is correct that complicated statistical analysis, especially which derived from anecdotal evidence or numbers collected independently from the defendant's own records, would likely require expert analysis in order to be properly introduced in court. However, the Court agrees with plaintiff that, "an expert [i]s not necessary because the data offered [i]s not of a scientific nature but merely reflect[s] existing conditions at [Bay Crane] at the time," Luciano, 110 F.3d at 217, and "[t]here [a]re no sophisticated statistical theories that need[] explanation," Stratton, 132 F.3d at 877.

Second, defendant Bay Crane's finger pointing at Local 14 and "other realities of the industry," is a relevant counterpoint as to the weight that the evidence on the racial composition of Bay Crane's crane operators should be given by the jury at trial. However, such arguments are not factors that should (or even could) reasonably be expected to be incorporated by the plaintiff into any statistical analysis of the racial composition of Bay Crane's employees. See Stratton, 132 F.3d at 877 (noting that the defendants "could have offered their own charts or statistics or

8

called their own expert witness," to counter plaintiff's interpretation of the statistical evidence and, at any rate, the district court provided an appropriate instruction to the jury about the proper weight to be given to such statistical evidence); Luciano, 110 F.3d at 217 (approving of the district court's jury instruction that "I caution you that the usefulness of statistics and numbers depends on all the surrounding facts and circumstances," such as "the relevant labor market, including the qualified applicant pool"); but see Lomotey v. Connecticut-Dept. of Transp., 355 Fed.Appx. 478, 481 (2d Cir. 2009) (affirming summary judgment for employer in race discrimination disparate treatment suit because "[plaintiff]'s evidence that only Caucasians were selected . . . amount[ed] to nothing more than raw numbers which, without further information on key considerations such as the racial composition of the qualified labor pool, [could] not support an inference of discrimination," but not discussing whether such statistics are appropriate where used only as circumstantial support).

Additionally, this Court is not persuaded by defendant's argument that the more appropriate parallel to Stratton would be the racial composition of Southern Service's crane operators, not Bay Crane's. Given plaintiff's allegations that the crane operators staffed on the Transit Project were passed back and forth between Southern Service and Bay Crane, along with the contract, it seems clear to this Court that the racial composition of both companies is relevant to allegations of discriminatory intent in hiring for the Transit Project. See Complaint, ECF Docket # 1, ¶¶ 14-17, 19, 21. Furthermore, the racial composition of Bay Crane's crane operators is not being offered by plaintiff Singh as the basis for his entire case. Rather, it is "relevant for the limited purpose offered by [the plaintiff], as one piece of circumstantial evidence supporting h[is] claim of pretext." Luciano, 110 F.3d at 217. Moreover, any prejudice to Bay Crane in

9

admitting such evidence could be easily countered by Bay Crane offering its own interpretation of the statistical evidence and appropriate jury instructions.

Accordingly, this Court finds that Plaintiff Singh may admit into evidence the racial composition of Bay Crane's crane operators because (1) the evidence entails simple data that does not require expert analysis to be properly admitted, and (2) the evidence is relevant to claims of discriminatory intent in hiring for the Transit Project, and its probative value outweighs its prejudicial value.

## CONCLUSION

Defendant Bay Crane's motion *in limine* is denied. Plaintiff Singh may admit into evidence the racial composition of Bay Crane's crane operators because (1) the evidence entails simple data that does not require expert analysis to be properly admitted, and (2) the evidence is relevant to claims of discriminatory intent in hiring for the Transit Project, and its probative value outweighs its prejudicial value. The parties shall review and modify their proposed jury instructions to ensure consistency with this opinion. Revised instructions shall be filed by April 6, 2015. The parties are encouraged to enter into any stipulations of fact that could streamline the presentation of evidence and mitigate evidentiary disputes at trial.

SO ORDERED.

Dated: Brooklyn, New York
      March 3, 2015                        /s/ Judge Raymond J. Dearie

                                                RAYMOND J. DEARIE
                                                United States District Judge